UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:25-cv-22175-DPG

**WANQIANG CHEN**,

                  Plaintiff,

  vs.

**THE INDIVIDUALS, PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A"**,

                  Defendants.

_____

**PLAINTIFF'S RENEWED *EX PARTE* APPLICATION FOR ENTRY OF TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, AND ORDER RESTRAINING TRANSFER OF ASSETS AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, WANQIANG CHEN ("Chen" or "Plaintiff"), by and through his undersigned counsel, hereby moves this Honorable Court for an order restraining transfer of assets, and upon expiration of the Temporary Restraining Order, a preliminary injunction against Defendants, the Individuals, Partnerships, and Unincorporated Associations Identified on the Amended Schedule "A" attached hereto (collectively "Defendants") pursuant to 17 U.S.C. §§ 502 and 503, Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a), and in support thereof states as follows:

**I.    INTRODUCTION**

Plaintiff has filed this copyright infringement lawsuit against Defendants, as e-commerce sellers that market, solicit, advertise, offer for sale, sale, and display content infringing on Plaintiff's registered copyrights through the e-commerce platform Temu. Every time Defendants offer to sell and/or sell a product using or bearing unauthorized copies or derivatives of Plaintiff's copyrights, there is a direct loss, for which monetary damages cannot adequately compensate because monetary damages fail to address the loss of control over Plaintiff's intellectual property

and goodwill. Based on this evidence, Plaintiff's Complaint alleges claims for willful copyright infringement and piracy.

Defendants should not be permitted to continue their unlawful activities, which are causing ongoing irreparable harm. Accordingly, Plaintiff is seeking entry of a temporary restraining order prohibiting Defendants' further wrongful use of Plaintiff's copyrights. Plaintiff also seeks to restrain the illegal profits generated by Defendants.

Plaintiff has obtained evidence that Defendants operate their Seller IDS via Temu and other platforms. These online marketplaces process payments or have related companies that perform payment processing for them.

The Copyright Act allows Plaintiff to recover, as equitable remedy, the actual damages suffered as a result of the infringement and any additional profits of the Defendants that are attributable to the infringement and are not taken into account in computing the actual damages (17 U.S.C. § 504(b)) or statutory damages (17 U.S.C. § 504(c)).

Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court, unless they are restrained. Accordingly, to preserve the disgorgement remedy, Plaintiff seeks an *Ex Parte* order restraining Defendants' assets, including, specifically, funds transmitted through payment processors for the platforms on which Defendants engage in their illegal activities. Plaintiff seeks this remedy because as the illegal marketplace for Plaintiff's works grows on the internet, the legitimate marketplace for his authentic works shrinks.

## II.  STATEMENT OF FACTS

### A.  Background On Plaintiff

1. Plaintiff is domiciled and residing in China. Plaintiff owns and operates his business. Plaintiff owns the copyrights described below that are the subject of this action. (Chen Decl. ¶ 4,

5).

2.     Plaintiff has utilized his Works in connection with the advertisement, marketing and sale of retail items, as depicted therein, in interstate and foreign commerce, including commerce in the State of Florida and the Southern District of Florida. (Chen Decl. ¶ 6).

3.     The recent explosion of infringement over the Internet has created an environment that requires me to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and myself from the ill effects of infringement of his intellectual property rights. (Chen Decl. ¶ 7).

6.     Plaintiff created the works entitled "Weed Removal Tool" (the "Works"), and the Works were registered with the Register of Copyrights on March 31, 2024 (Reg. No. VAu 1-530-978) and on April 18, 2024 (Reg. No. VAu 1-532-501). (Chen Decl. ¶ 8,9; Exhibit 1 to the Complaint).

**B.     Defendants' Copyright Infringement**

7.     Plaintiff's Copyright Works have never been assigned or licensed to any of the Defendants. (Chen Decl. ¶ 19). Despite Defendants' lack of authority, they are promoting, advertising, distributing, selling and/or offering for sale, through their respective Seller IDs, goods bearing unauthorized copies of Plaintiff's Works without authorization within the state of Florida, including this district and throughout the United States. (Chen Decl. ¶ 24).

8.     Plaintiff hired an investigator to investigate the promotion and sale of infringing products by Defendants to obtain payment account information for funds paid to Defendants for the sale of infringing products. (Chen Decl. ¶ 12). These investigations have established that Defendants are using Temu.com or other platforms to sell infringing products from foreign countries such as China to consumers in the United States. (Chen Decl. ¶ 14).

9.      Plaintiff or someone under his supervision accessed Defendants' Internet based ecommerce stores operating under their respective seller identification names through Temu.com or other platforms as identified on Schedule "A" to the Complaint (the "Seller IDs"). (Chen Decl. ¶ 15). Plaintiff or someone under his supervision was able to view infringing products bearing or using unauthorized copies of Plaintiff's Works, add products to the online shopping cart, proceed to a point of checkout, and otherwise actively exchange data with the e-commerce store.

10.     Plaintiff or someone under his supervision captured detailed web pages for each Defendant reflecting each infringing or counterfeit product bearing or using unauthorized copies of Plaintiff's Copyrighted Works. (Chen Decl. ¶ 17). These web pages show Defendants slavishly copied Plaintiff's Copyrighted Works, and offer goods for sale indistinguishable to consumers, both at point of sale and post-sale. (Chen Decl. ¶ 18, Composite Exhibit 1).

**C.      Defendants' Infringing Activities Cause Irreparable Harm To Plaintiff In The Form Of Price Erosion, Damage To Intellectual Property, And Loss Of Goodwill That Are Not Compensable By Damages Alone**

11.     Defendants are selling their infringing goods to consumers within this district and throughout the United States. (Chen Decl. ¶ 21). Defendants are responsible for thousands of infringing products bearing or using unauthorized copies of Plaintiff's Copyrighted Works. (Chen Decl. ¶ 25). Each sale made by the Defendants through a webstore results in a direct loss to Plaintiff. (Chen Decl. ¶ 26).

12.     Defendants' internet activities infringe on Plaintiff's intellectual property rights. (Chen Decl. ¶¶ 14, 15). The Seller IDs and associated payment accounts are a substantial part of the means by which Defendants further their scheme and cause harm to Plaintiff. (Chen Decl. ¶ 16).

13.     As the illegal marketplace for Plaintiff's products grows on the Internet, the legitimate Marketplace for Plaintiff's authentic works shrinks. (Chen Decl. ¶ 29). Monetary

damages cannot adequately compensate Plaintiffs for ongoing infringement because monetary damages fail to address the loss of control and damage to Plaintiff's intellectual property and goodwill. (Chen Decl. ¶ 30). Furthermore, monetary damages are difficult, if not impossible, to ascertain due to the inability to calculate measurable damage in dollars and cents caused to Plaintiff's intellectual property and goodwill by acts of infringement. (Chen Decl. ¶ 31).

14. Plaintiff's intellectual property and goodwill are irreparably damaged when his Works is used on goods not authorized, produced, or manufactured by Plaintiff. (Chen Decl. ¶ 32). The ability of Defendants to reproduce, modify, distribute, and display unauthorized copies of the copyrighted Works for their own commercial benefit without compensation to Plaintiff impairs the market value of the Copyrighted Works since others competing with Defendants' businesses, or in related business areas, will not want to obtain a license to Plaintiff's copyrights if they are already associated with a competing business. In addition, potential licensees of Plaintiff's Copyrighted Work will not want to pay license fees if they see other commercial enterprises taking and using the works for their own commercial purposes without paying any fee at all. (Chen Decl. ¶ 39).

15. Loss of quality control over goods bearing Plaintiff's Works and, in turn, loss of control over his intellectual property, is neither calculable nor precisely compensable. (Chen Decl. ¶ 36). Consumers who mistakenly believe that the infringing products he or she has purchased originated from Plaintiff will come to believe that Plaintiff offers low quality products.[1]

---

[1] Even if a consumer knows he or she is buying infringing goods, prospective consumers who see those goods used by others may mistakenly believe such goods to be genuine and may consequently develop a poor impression of Plaintiff's works. Such post-sale confusion results in further damage to Plaintiff's reputation and correlates to a loss of unquantifiable future sales. (Chen Decl. ¶¶ 34, 38).

### III. ARGUMENT

#### A. A Temporary Restraining Order Is Essential To Prevent Immediate Injury

A Temporary Restraining Order ("TRO") may be granted without written or oral notice where "specific facts in an affidavit . . . clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b). Entry of a Temporary Restraining Order is warranted here. Plaintiff has shown that Defendants fraudulently promote, advertise, sell, and offer for sale goods bearing infringements of Plaintiff's Works, via Temu using the Seller IDs. Plaintiff has shown Defendants are wrongfully using infringements of the Works to increase consumer traffic to their illegal operations.

The entry of a Temporary Restraining Order would immediately stop Defendants and preserve the *status quo* until such time that a hearing can be held. See *Dell Inc. v. Belgium Domains, LLC*, Case No. 07-22674 2007 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding *ex parte* relief more compelling where defendants' scheme "is in electronic form and subject to quick, easy, untraceable destruction by Defendants."). Absent a TRO, Defendants can, and, based upon Plaintiff's counsel's past experience, will significantly alter the *status quo* before the Court can determine the parties' respective rights. (Reiner Decl. ¶ 8). The internet e-commerce stores are under Defendants' complete control, and Defendants can change ownership or e-commerce store data and content, redirect consumer traffic, change payment accounts, and transfer assets and ownership of the Seller IDs at a moment's notice. (Reiner Decl. ¶ 9). Defendants can easily and quickly transfer and secret the funds sought to be restrained and thereby thwart the Court's ability to grant meaningful relief. (Reiner Decl. ¶ 10).

Defendants engage in illegal infringing activities. Defendants' assets will be unavailable for recovery or an accounting of profits without the entry of an *ex parte* TRO. The business of infringers is built on deliberate misappropriation of rights and property belonging to others.

Proceeding on an *ex parte* basis is a well-established practice. *Apple Corps v. Individuals*, Case No. 20-60982-CIV- DIMITROULEAS, 2020 U.S. Dist. LEXIS 141919 (S.D. Fla. May 21, 2020) (Order granting ex parte application for temporary restraining order and restraining defendants' assets and defendants' related assets).

### B.     Standard for Temporary Restraining Order and Preliminary Injunction.

To obtain a TRO or a preliminary injunction[2], a party must establish (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *See Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,* 51 F.3d 982, 985 (11th Cir. 1995) (affirming entry of preliminary injunction and freezing of assets). Plaintiff's evidence establishes all the relevant elements.

#### 1.     Probability of Success on the Merits of Plaintiff's Claims.

A copyright infringement action required a Plaintiff to prove (1) ownership of a valid copyright, and (2) actionable copying by the Defendant. *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).

Plaintiff duly registered the Works with the Copyright Office. (Chen Decl. ¶ 9; Exhibit 1 to the Complaint). Plaintiff has further established his entitlement as exclusive licensee of all rights in and to the Copyrighted Works at issue in this action. Plaintiff's valid copyright registrations satisfies the first prong of the test of copyright infringement.

Plaintiff has also established Defendants' actionable copying. A comparison of

---

[2] The standard for obtaining a temporary restraining order and the standard for obtaining a preliminary injunction are the same. See Emerging Vision, Inc. v. Glachman, Case No. 10-cv-80734, 2010 WL 3293346, at *3 (S.D. Fla. June 29, 2010) (citing Siegel v. LePore, 120 F. Supp. 2d 1041 (S.D. Fla. 2000) aff'd 234 F.3d 1163 (11th Cir. 2000)).

Defendants' infringing goods with Plaintiff's copyrighted Works shows Defendants' blatant infringement of Plaintiff's exclusive copyright as the images are exact duplicates or substantially similar design and images to Plaintiff's Copyrighted Works. (Chen Decl. ¶¶ 18-23; Compare Defendants' infringing products in Composite Exhibit 1 to Chen Decl. with Plaintiff's original Works in Exhibit 2 to the Complaint).

Therefore, a likelihood of success on Plaintiff's copyright infringement claim is established.

### 2. Plaintiff is Suffering Irreparable Injury.

A copyright holder possesses "the right to exclude others from using his property." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 392 (2006) (citing *Fox Film Corp.v. Doyal*, 286 U.S. 123 (1932)). Defendants' infringing conduct deprives Plaintiff of control over his exclusive copyright rights, causing irreparable harm. *Salinger v. Colting*, 607 F.3d 68, 82 (2d Cir. 2010) (holding violation of copyright owner's "right to exclude" renders monetary remedies inadequate in a wide range of circumstances) (quoting *eBay, Inc*. at 395). These harms are notoriously difficult to quantify, and accordingly are considered irreparable. See *Salinge*r, 607 F.3d at 81 (loss of sales due to infringement is "notoriously difficult" to prove).

Every time Defendants offer to sell and/or sell a product using Plaintiff's Works, Plaintiff suffers a direct loss, which monetary damages cannot adequately compensate for because they fail to address the loss of control over Plaintiff's intellectual property and goodwill. (Chen Decl. ¶ 26). Loss of quality control over goods sold utilizing Plaintiff's Works is neither calculable nor precisely compensable. (Chen Decl. ¶ 36). Plaintiff will continue to suffer irreparable harm unless Defendants' infringing activity is stopped. (Chen Decl. ¶ 40).

### 3. The Balance of Hardship Tips Sharply in Plaintiff's Favor.

Because Defendants are engaged in infringement activities, "the only hardship [they] will suffer as a result of an injunction is court-ordered compliance with the copyright laws." *Adobe*

*Systems, Inc. v. Brenengen*, 928 F. Supp. 616, 618 (E.D.N.C. 1996). In other copyright cases, the Courts have ruled that the evidence of irreparable harm to plaintiff far outweighs the harm that a preliminary injunction may cause Defendant. *CB Fleet Co., Inc. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1083 (S.D. Fla. 2007) (holding a company cannot build a business on infringements and then argue that enforcing the law will cripple that business) *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333 (S.D.Fla.1998)).

Here, Defendants are promoting, advertising, distributing, selling and/or offering for sale goods bearing unauthorized copies of the Works, through their respective Seller IDs. (Chen Decl. ¶ 24). Defendants' infringing activity is conducted without Plaintiff's authorization of his Copyrighted Works. Meanwhile, Defendants will suffer no legitimate hardship in the event a temporary restraining order is issued because Defendants have no right to engage in their present infringing activities.

### 4. The Relief Sought Serves the Public Interest.

The public interest clearly favors maintaining the integrity of the copyright laws. See *C.B. Fleet Co*. 510 F. Supp. at 1084 (S.D. Fla. 2007) ("The public interest can only be served by upholding copyright protection and preventing the misappropriation of protected works"). Protecting Plaintiff's Work is consistent with promoting public interest. Defendants are engaged in illegal activities and are directly defrauding the consuming public by palming off Defendants' goods as Plaintiff's genuine goods. The public interest favors the issuance of the requested relief to avoid further harm to the public. *Salinger*, 607 F.3d at 82; see also *CBS Broad., In c. v. EchoStar Comm'ns. Corp.*, 265 F.3d 1193, 1198 (11th Cir. 2001) (the public interest lies with protecting the rights of copyright owners). Furthermore, the public interest favors entry of a preliminary injunction to protect the consumer from being defrauded and misled by infringing photographs. *Id*. Similarly in this matter, the public needs to be protected from being defrauded and buying

Defendants' infringing products.

### C. The Equitable Relief Sought is Appropriate.

The Copyright Act, 17 U.S.C § 502 (a), authorizes any Court having jurisdiction of a civil action arising under title 17, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

### 1. Entry of an Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Copyrights is Appropriate.

Plaintiffs request an order requiring Defendants to immediately cease all use of the Works, or substantially similar photographs, including on or in connection with all e-commerce stores owned and operated, or controlled by them. This relief is necessary to stop the ongoing harm to Plaintiff's copyright and goodwill and to prevent Defendants from continuing to benefit from the increased consumer traffic to their illegal operations created by their unlawful use of Plaintiff's intellectual property rights.

Many courts, including this Court, have authorized immediate injunctive relief in similar cases involving the unauthorized use of infringing intellectual property. See *adidas AG v. the Individuals, Partnerships, and Unincorporated Ass'ns Identified on Schedule "A,"* Case No. 21-60242 (S.D. Fla. Feb. 5, 2021) (Order Granting Ex Parte Application for Entry of Temporary Restraining Order); *Chanel, Inc. v. designerchanelgirl.com*, Case No. 20-cv- 62447-RS (Dec. 7, 2020) (same); *Taylor Made Golf Company, Inc. et al v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A",* Case No. 20-cv-60468-RS (S.D. Fla. April 9, 2020) (same); *Whirlpool Corporation v. Discountfridgefilter.com*, Case No. 19-cv-63115- RS (S.D. Fla. Jan. 7, 2020) (same); *Parsons Xtreme Golf, LLC v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60310-BLOOM, 2019 U.S. Dist. LEXIS 79074 (S.D. Fla.

Feb. 7, 2019) (same); *adidas AG v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A",* No. 19-60457-CIV-DIMITROULEAS, 2019 U.S. Dist. LEXIS 78028 (S.D. Fla. Feb. 25, 2019) (same); *Apple Corps v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-60404-CIV-WILLIAMS, 2019 U.S. Dist. LEXIS 78863 (S.D. Fla. Feb. 19, 2019) (same)

### 2. Entry of an Order Prohibiting Transfer of the Seller IDs During the Pendency of this Action is Appropriate.

To preserve the *status quo*, Plaintiff seeks an order temporarily modifying control of and prohibiting Defendants from transferring use or control of the Seller IDs and funds in their payment processing accounts to other parties.

Once they become aware of litigation against them, Defendants operating online can easily, and often will, change the ownership or modify e-commerce store data and content, change payment accounts, redirect consumer traffic to other seller identification names, and transfer assets and ownership of the Seller IDs, and thereby thwart the Court's ability to grant meaningful relief. (Reiner Decl. ¶¶ 8-10).

Here, an interim order prohibiting Defendants from transferring their e-commerce stores operating under the Seller IDs poses no burden on them, preserves the *status quo*, and ensures that this Court, after fully hearing the merits of this action, will be able to afford Plaintiff full relief. *Seeadidas AG v. the Individuals, Partnerships, and Unincorporations Identified on Schedule "A,"* Case No. 21-60242 (S.D. Fla. Feb. 5, 2021) (Order restraining the transfer of e- commerce stores operating via marketplace platform); *Taylor Made Golf Company, Inc. et al v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A",* Case No. 20-cv- 60468-RS (S.D. Fla. April 9, 2020) (same); *Whirlpool Corporation v. Discountfridgefilter.com*, Case No. 19-cv-63115-RS (S.D. Fla. Jan. 7, 2020) (same); *Parsons Xtreme Golf, LLC v. Individuals, P'ships &*

*Unincorporated Ass'ns Identified on Schedule "A"*, No. 19-cv-60310- BLOOM, 2019 U.S. Dist. LEXIS 79074 (S.D. Fla. Feb. 7, 2019) (same); *YETI Coolers, LLC v. Allramblerdeal.com*, No. 18-cv-62811-DIMITROULEAS, 2018 U.S. Dist. LEXIS 225651 (S.D. Fla. Nov. 21, 2018) (same); *Cartier Int'l A.G. v. Replicapaneraiwatches.cn*, No. 17-cv-62401- MOORE, 2018 U.S. Dist. LEXIS 225476 (S.D. Fla. Jan. 2, 2018) (same).

### 3. An *Ex Parte* Order Restraining Transfer of Assets is Appropriate

In addition to an order temporarily restraining Defendants' practices, the Court should enter an order limiting the transfer of Defendants' unlawfully gained assets. Plaintiff has demonstrated above that it will likely succeed on the merits of its claims. As such, Plaintiff will be entitled to an accounting and payment of the profits earned by Defendants throughout the course of their infringing scheme. 17 U.S.C. §§ 504 and 505.

In view of Defendants' intentional violations, Plaintiff respectfully requests this Court grant additional *ex parte* relief identifying payment accounts and restraining the transfer of all monies held or received by the financial entities at issue herein for the benefit of any one or more of the Defendants. See *International Star Class Yacht Racing Ass'n v. Tommy Hilfiger USA, Inc.*, 80 F.3d 749 (2d Cir. 1996); *SEC v. ETS Payphones*, 408 F.3d 727, 735 (11th Cir. 2005) (finding it proper to all of the defendant's assets, because it was necessary to preserve sufficient funds for the potential disgorgement in the case).

In light of the illicit nature of the infringement business and the ability of infringers to practically eliminate their evidentiary trails by conducting their business entirely over the Internet, courts in the Eleventh Circuit, among others, have particularly noted the significance of such asset restraints in cases involving infringing Defendants. *Levi Strauss & Co.*, 51 F.3d at 987; *Reebok Int'l Ltd. v. Marnatech Enter.*, 737 F. Supp. 1521 (S.D. Cal. 1989), *aff'd*, 970 F.2d 552 (9th Cir. 1992).

Courts may issue broad asset restraints to preserve the availability of permanent relief, including assets that are not directly traceable to the fraudulent activity that serves as a basis for the equitable relief requested. *See S.E.C. v. Lauer*, 445 F. Supp. 2d 1362, 1370 (S.D. Fla. 2006) (noting that there is no requirement for the restrained assets be traceable to the fraudulent activity underlying a lawsuit); *Levi Strauss & Co.*, 51 F.3d at 987-88 (upholding asset restraint, including assets not linked to the profits of the alleged illegal activity, noting the defendants may request the court exempt any particular assets); *Kemp v. Peterson*, 940 F.2d 110, 113-14 (4th Cir. 1991) (district court may restrain assets not specifically traced to illegal activity).

Moreover, to provide complete equitable relief, courts have granted such orders without providing notice to the defendants. Specifically, federal courts have held that where advance notice of an asset restraint is likely to cause a party to alienate the assets sought to be restrained, a temporary restraining order may be issued ex parte. *See F.T. Int'l Ltd v. Mason*, 2000 WL 1514881 *3 (E.D. Pa. 2000) (granting *ex parte* TRO restraining defendants' bank accounts upon finding that advance notice would likely have caused the defendants to secret or alienate funds); *CSC Holdings, Inc. v. Greenleaf Elec., Inc.,* 2000 WL 715601 (N.D. Ill. 2000) (granting *ex parte* TRO enjoining cable television pirates and restraining pirates' assets).

In this case, Defendants' blatant violations of federal copyright laws warrant an *ex parte* order restraining the transfer of their ill-gotten assets. Moreover, as Defendants' businesses are conducted anonymously over the Internet, Plaintiff has additional cause for *ex parte* relief, as Defendants may easily secret or transfer their assets without the Court's or Plaintiff's knowledge.

   D.   **A Bond Should Secure the Injunction.**

Because of the strong and unequivocal nature of Plaintiff's evidence infringement, Plaintiff respectfully requests this Court requires it to post a bond of no more than ten thousand dollars ($10,000.00), subject to increase at the Court's discretion should an application be made in the

interest of justice. The posting of security upon issuance of a temporary or preliminary injunction is vested in the Court's sound discretion. Fed. R. Civ. P. 65(c).

## IV. CONCLUSION

In view of the foregoing, Plaintiff respectfully requests this Court grant his *Ex Parte* Application and enter a Temporary Restraining Order as to Defendants in the form submitted herewith and schedule a hearing on Plaintiff's Motion for a Preliminary Injunction before the expiration of the Temporary Restraining Order.

Additionally, in the event the Application is granted, Plaintiff respectfully requests the Court permit the parties, including witnesses, to appear and testify as necessary telephonically or by remote video at the hearing on Plaintiff's Motion for a Preliminary Injunction, in accordance with the administrative orders of this court.

Furthermore, due to the time provisions of a Temporary Restraining Order, in the event the Application is granted, Plaintiff respectfully requests the Court provide a copy of the Temporary Restraining Order to Plaintiff's counsel via e-mail at dpr@reinerslaw.com so that Plaintiff may immediately effectuate any relief ordered therein and provide Defendants' proper notice of the order and any subsequent hearing date.

**DATED:  November 10, 2025**          Respectfully Submitted,

**REINER & REINER, P.A.**
*Counsel for Plaintiff*
9100 South Dadeland Blvd., Suite 901
Miami, Florida   33156-7815
Tel: (305) 670-8282; Fax: (305) 670-8989
dpr@reinerslaw.com; eservice@reinerslaw.com

By: _____
   **DAVID P. REINER, II, ESQ.**; FBN 416400